## GRANT COAL MINING COMPANY v. COLEMAN.

[No. 25,305. Filed February 25, 1932. Rehearing denied December 9, 1932.]

*Adamson & Gallagher* and *Russell Blair,* for appellant.
*George W. Wells* and *Lindley & Bedwell,* for appellee.

TREANOR, J.—On the 21st day of April, 1926, appellee filed in the office of the clerk of the Superior Court of Vigo County, No. 2, a certified copy of a compensation agreement, executed by appellee, employee, and appellant, employer, on January 15, 1916, pursuant to the provisions of the Workmen's Compensation Act then in force in Indiana. The agreement provided that appellant should pay to appellee "the sum of seven dollars and thirty-five cents per week beginning January 2, 1916, that being two weeks after the date of the accident —said weekly payments to be continued during the period of total disability of the injured Roy Coleman." At the time of filing the aforesaid copy appellee petitioned for "entry of judgment upon agreement approved by Industrial Board of Indiana," and the court rendered judgment "that Roy Coleman recover of and from the Grant Coal Mining Company, the sum of $7.35 per week for a period of 500 weeks, beginning January 2, 1916, or a total of $3,675.00." After the rendition of the foregoing judgment the appellant was notified as required by §62 of Workmen's Compensation Act (Burns Ann. Ind. St. 1926, §9507). Appellant then entered a special appearance "for the sole and only purpose of moving the court to vacate and set aside the judgment heretofore rendered," etc. This motion was overruled, and from such action the appellant prosecutes this appeal.

Appellant makes the following assignment of errors:

1. The court below was without jurisdiction of the subject matter of this action.

2. The court below was without jurisdiction of the person of the appellant.

3. The petition or motion of appellee for judgment does not state facts sufficient to constitute a cause of action against this appellant.

4. The certified copy of agreement between appellant and appellee for payment of compensation and approved by the Industrial Board of Indiana does not state facts sufficient to constitute a cause of action against appellant.

5. The certified copy of agreement between appellant and appellee for payment of compensation and approved by the Industrial Board of Indiana is too indefinite and uncertain to authorize the court to render any judgment thereon.

6. The court erred in rendering judgment against this appellant.

7. The court erred in overruling appellant's motion to vacate and set aside the judgment.

We think appellant's case on appeal reduces to the single question of the constitutionality of §62 of our Workmen's Compensation Act. The record shows that §62 was carefully followed by both appellee and the Superior Court of Vigo County, and if this section is valid it follows that the Superior Court properly refused to vacate and set aside the judgment. Appellant filed a "certified copy of the memorandum of agreement approved by the Board" and if the Superior Court's judgment was in accordance with the copy of the memorandum of agreement, the only avenue which was open to appellant to avoid the effect of the judgment was by application to the Industrial Board for a modification or change in award. If the judgment was not in accordance with the memorandum of agreement the appellant's remedy was by motion to modify to conform to such memorandum. *Kuhr* v. *Willan* (1930), 90 Ind. App. 567, 169 N. E. 475.

Appellant insists that §62 of the Workmen's Compensation Act is unconstitutional for the reason that it violates Art. III §1 of the Indiana Constitution by impos-

ing administrative duties upon the judiciary, and ■ for the further reason that it violates the due process clauses of both the State and United States Constitutions by authorizing the entry of judgment "without notice, or the service of process or an appearance."

Under §62 a circuit or superior court renders judgment in accordance with the terms of an order or award of the Industrial Board, or a memorandum of agreement approved by the Industrial Board, without a hearing or determination of "any case or controversy between the parties"; and this judgment must be modified to conform to any change of the award, or agreement, subsequently made by the Industrial Board. Appellant insists that the court's act of rendering a judgment with the foregoing restrictions is an administrative act, which a court has no power to perform. We take appellant to mean that a hearing involving a "case" or "controversy" is an indispensable prerequisite to the judicial act of rendering a judgment, and that this hearing must be had before the court pronouncing judgment. Appellant cites in support of his position several United States Supreme Court cases. (Hayburn's Case, and note, 2 Dall. 408; *United States* v. *Ferreira* (1851), 13 Howard 39; (See also note on *United States* v. *Yale Todd* (1794), 13 Howard 39, 51); *Gordon* v. *United States* (1885), 117 U. S. 697; *Muskrat* v. *United States* (1910), 219 U. S. 346.) In only one of these cases, *Muskrat* v. *United States, supra,* did the action required of a Federal court take the form of a judgment, with the usual legal consequences of a judgment. The other cases involved the constitutionality of acts of Congress which authorized inferior Federal courts to examine and determine certain money claims against the United States. These determinations were subject to revisory action by administrative officers and did not, in any sense, consti-

tute judgments of these courts. It was the ineffectiveness of the decisions which deprived them of a judicial character. In *Gordon* v. *United States, supra,* the court makes this clear by the following:

"The award of execution is a part, and an essential part of every judgment passed by a court exercising judicial power. It is no judgment, in the legal sense of the term, without it. Without such an award the judgment would be inoperative and nugatory, leaving the aggrieved party without a remedy. It would be merely an opinion, which would remain a dead letter, and without any operation upon the rights of the parties, unless Congress should at some future time sanction it, and pass a law authorizing the court to carry its opinion into effect. Such is not the judicial power confided to this court, in the exercise of its appellate jurisdiction: yet it is the whole power that the court is allowed to exercise under this act of Congress."

The case of *Muskrat* v. *United States, supra,* was the result of an act of Congress authorizing the bringing of a suit to test the validity of certain previous acts of Congress providing for the allotment of Indian lands and placing restraints upon alienation. Pursuant to the act an action was commenced in the Court of Claims and subsequently an appeal was taken to the United States Supreme Court. In disposing of the appeal the Supreme Court reviews the opinions of the judges in Hayburn's Case, the opinion in *United States* v. *Ferriera,* and Taney's opinion in *Gordon* v. *United States.* After pointing out that the exercise of judicial power, under the United States Constitution, is limited to "cases" and "controversies," the court concludes that it has no power to pass on the question presented in the Muskrat appeal since the proceeding was not a "case" or "controversy" within the meaning of the United States Constitution. (Art. III §16.) The court put the question thus:

"This attempt to obtain a judicial declaration of the validity of the act of Congress is not presented

in a 'case' or 'controversy,' to which, under the Constitution of the United States, the judicial power alone extends. It is true the United States is made a defendant to this action, but it has no interest adverse to the claimants. . . . In a legal sense the judgment could not be executed, and amounts in fact to no more than an expression of opinion upon the validity of the acts in question. . . . If such actions as are here attempted, to determine the validity of legislation, are sustained, the result will be that this court, instead of keeping within the limits of judicial power and deciding cases or controversies arising between opposing parties, as the Constitution intended it should, will be required to give opinions in the nature of advice concerning legislative action, a function never conferred upon it by the Constitution, and against the exercise of which this court has steadily set its face from the beginning."

The foregoing United States Supreme Court cases do not purport to define the judicial function, or power, generally, but merely hold that the judicial power of the Federal courts can be invoked to hear and decide only actual cases and controversies. The Constitution of Indiana does not define "judicial power" and nowhere limits the function of courts to hearing and deciding cases and controversies.

Art. III §1, Indiana Constitution, confers, without defining, judicial power upon the judicial department and requires that "no person charged with official duties under one of these departments shall exercise any of the functions of another." Normally an act of rendering judgment by a circuit or superior court is clearly a judicial function; in fact only a court can exercise the judicial power of rendering a judgment. It is true that a judgment rendered by a court under the authority of §62 of the Workmen's Compensation Act has not been preceded by the acts which usually precede the entry of a judgment by a court. But does this

deprive the act of rendering a judgment of its judicial character? The General Assembly might have provided for a trial of industrial accident cases before our circuit and superior courts with authority in these courts to make findings and to pronounce judgments thereon. But the General Assembly evidently believed that industrial accident cases should be handled by a specialized tribunal with authority to investigate and pass upon the facts in each case and to determine the award in view of the facts and the provisions of the Workmen's Compensation Act. The statute treats such an award, or an approved agreement, as equivalent to a finding of a court or verdict of a jury and authorizes the rendering of a judgment by a circuit or superior court upon the basis of the award. We find nothing in the Constitution of Indiana that requires any particular type of hearing, or any hearing, to precede a rendition of judgment by a court in order that such rendition of judgment may be a judicial act. One may easily imagine situations in which the absence of a hearing would result in denial of due process, but the act of pronouncing judgment is none the less a judicial act. Under §62, *supra*, "Such judgment shall have the same effect, and all proceedings in relation thereto shall thereafter be the same, as though said judgment had been rendered in a suit duly heard and determined by said court." We cannot conceive of anything less suggestive of an administrative act, as far as legal consequences are concerned. It is well to note that §62 does not purport to transform a judicial act into an administrative one; nor does it attempt to give to an administrative order the character of a judgment of a court. The statute recognizes that only a court has power to render judgments, in the judicial sense, and seeks to utilize this power for the benefit of those in whose favor awards have been made by the Industrial Board.

"The award is evidence of a liability; the judgment of the court is required and is provided for, to enforce the liability, since the decisions of the Industrial Accident Board cannot be carried into execution by an action or mandate of the board." *Brown* v. *Fuller Co.* (1916), 193 Mich. 214, 218 (1916), 159 N. W. 376.

". . . when copies of the 'decision of the board . . . and all papers in connection therewith' have been transmitted to the Superior Court 'said court shall render a decree in accordance therewith.' This means such a decree as the law requires upon the facts found by the board. It does not make the action of the Superior Court a mere perfunctory registration of approval of the conclusion of law reached by the Industrial Accident Board. . . . The obligation placed upon the Superior Court by the requirement to enter a decree in accordance with the decision is to exercise its judicial function by entering such decree as will enforce the legal rights of the parties as disclosed by the facts appearing on the record." Stuart McNicol's (dependents) Case (1913), 215 Mass. 497, 102 N. E. 697.

The problem reduces to the single question: Can superior and circuit courts be required to pronounce judgment upon the basis of, and in accordance with, an award of the Industrial Board the same as they are required to pronounce judgment upon "findings," or upon verdicts of juries? We think they can, provided the party adversely affected is not deprived of due process; and when we consider the "case" as originating before the Industrial Board and continuing before the circuit or superior court to final judgment there is no absence of due process. There is notice to the employer, a hearing on the facts, a determination or finding as to the extent of the employer's liability and then a rendering of judgment in accordance with such finding.

Assuming that the act of a circuit or superior court in rendering judgment under §62 of the Workmen's Compensation Act is a judicial and not an administrative act, is the judicial character of the act destroyed by the

fact that under §62 the court is required to modify its judgment to conform to subsequent changes in the award made by the Industrial Board? It is true, as suggested by appellant, that "the judgment of a court can never be modified, vacated or changed by any other department of the government than the judicial" but under·§62 the Industrial Board has no power to change or modify a judgment of any court. The power that the Industrial Board has is to make a new finding on the basis of new evidence. A party in interest may file a certified copy of such new finding, or decision, and the court, by its own power, modifies its own judgment to conform to the new finding.

We hold that the act of Vigo Superior Court No. 2 in rendering judgment in accordance with the certified copy of agreement between appellant and appellee, as approved by the Industrial Board, was a judicial act and that the court had jurisdiction to enter the judgment.

As to appellant's contention that he is deprived of due process of law by reason of the procedure authorized by §62 we have already indicated above that the requirements of notice and hearing are sufficiently taken care of by the statute. Appellant insists, however, that, since the judgment was rendered against him without notice prior to its rendition, he was deprived of any opportunity to appear and show to the court that the agreement, or award, had been satisfied or should have been modified. It is clear that it would have been useless for appellant to have appeared and attempted to affect the amount of the judgment by showing that he had paid the amount of the award either in part or in full. The Superior Court's duty was to render judgment in accordance with the terms of the certified copy of the agreement which had been approved by the Industrial Board. *Kuhr* v. *Willan, supra.*

On the other hand, it is obvious that the requirements of due process would make it necessary to afford the appellant a reasonable opportunity of avoiding an illegal payment; and unless the Workmen's Compensation Act does reasonably safeguard the defendant's interests in this regard he has good grounds for complaint under the due process clauses. But §45 of the Workmen's Compensation Act gives either party the privilege of applying to the Industrial Board for modifications or changes in awards—"ending, lessening, continuing or extending the payments previously awarded, either by agreement or upon hearing as it may deem just, subject to the maximum and minimum provided for in this act." The interested party then can secure a modification of the judgment of the circuit or superior court to correspond to the decision of the Industrial Board modifying the original award.

Appellant, however, contends that prior to the amendment of §45 by the General Assembly in 1919 (Acts of 1919, ch. 57, p. 158) the Industrial Board did not have continuing jurisdiction of approved agreements, and, consequently, that it would have been impossible for appellant to have secured a modification by the Industrial Board of the original agreement, in order to show a termination of total disability of appellee, or a final settlement on a basis of less than five hundred weeks total disability. It is true that the original §45, as enacted in 1915, did not expressly state that the Industrial Board had continuing jurisdiction over approved agreements to the same extent as over awards after hearings. But the decisions of the Appellate Court construed §45 to so provide, and this court is bound by the construction which the Appellate Court gives to the provisions of the Workmen's Compensation Act. Under these decisions the appellant had an adequate method of protecting itself, both before and after

rendition of the judgment. See *In re Stone* (1917), 66 Ind. App. 38, 117 N. E. 669; *Pedlow* v. *Swartz Electric Co.* (1918), 68 Ind. App. 400, 120 N. E. 603; *Home Packing & Ice Co.* v. *Cahill* (1919), 71 Ind. App. 245, 123 N. E. 415; *Aetna Life Ins. Co.* v. *Shively* (1920), 75 Ind. App. 620, 121 N. E. 50.

If, as appellant insists, the total disability of appellee ended prior to the expiration of the five hundred weeks, it was incumbent upon appellant, under §§62 and 45 of the Workmen's Compensation Act, to make application to the Industrial Board to modify the approved agreement by an order "lessening, continuing or extending the payments previously awarded," etc. ("The court has no authority to modify the award or change its effect." *Kuhr* v. *Willan, supra.*) And where, as in the instant case, the maximum period of 500 weeks has passed, and the certified copy of the award is silent as to any subsequent action by the Industrial Board, the superior or circuit court must presume that there is an accumulated claim for the maximum amount under the award and should render judgment accordingly. This is the view of the Appellate Court as shown by the following:

> "It appears that on June 23, 1919, a judgment was rendered in the Grant Circuit Court on the original award for $747.08, *that being the amount of compensation then due* under the award, and also for the further sum of $10.39 per week to become due and continuing for not to exceed 500 weeks from the commencement of the original award." *Lambert* v. *Powers* (1921), 76 Ind. App. 77, 80, 131 N. E. 420. (Our italics.)
> "We see no objection to the court rendering judgment for the amount of compensation then due and unpaid. See *Lambert* v. *Powers* (1921), 76 Ind. App. 77, 131 N. E. 420." *Kuhr* v. *Willan, supra.*

While recognizing that the Workmen's Compensation Act represents a radical departure from the traditional

procedure followed in our courts—combining, as it does, in one proceeding and one case the fact finding function of the Industrial Board and the judgment rendering power of a court, we do not believe that there is any violation of the Indiana Constitution as respects the separation of powers, or any violation of the due process provisions of either the State or the United States Constitutions. The Illinois Appellate Court, First District, in *Drtina et al.* v. *Charles Tea Co.* (1917), 204 Ill. App. 183, was required to pass upon the validity of a judgment rendered in a circuit court of Illinois in a suit brought "upon a judgment rendered in the Superior Court of Lake County, Indiana, upon an award in a statutory action under the 'Workmen's Compensation Act of Indiana.'" We quote with approval the following words of the Illinois court:

"Tested by the laws of Indiana the judgment is valid, and there is no good reason for not according it the same faith and credit in Illinois as if it were a judgment in the ordinary common law action. The judgment should not be reversed because of unusualness of the proceeding; most everything was new once."

For the foregoing reasons we conclude that the Vigo Superior Court No. 2 did not err in overruling appellant's motion to set aside and vacate the judgment rendered.

Judgment affirmed.