v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–1012–JV–1394.

Court of Appeals of Indiana.

July 29, 2011.

---

Patricia Caress McMath, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

A.T. was adjudicated a juvenile delinquent for committing an act that would be felony murder if committed by an adult, and the juvenile court ordered wardship of him to the Indiana Department of Correc-

tion pursuant to both indeterminate and determinate sentences. A.T. now appeals his determinate sentence, which requires him to remain in the care and custody of the DOC until his eighteenth birthday, arguing that the juvenile court failed to make a determination required by statute. We conclude that notwithstanding language in the determinate sentence statute, Indiana Code section 31–37–19–9, such a determination is not required. We also conclude that the juvenile court did not abuse its discretion in sentencing him to a determinate sentence. We therefore affirm the juvenile court.

### Facts and Procedural History

On April 11, 2010, thirteen-year-old A.T. and two sixteen-year-olds, Damian Clay and Tyler Slash, all members of the Young Mafia Boys gang, attempted to rob sixty-six-year-old James Arnold while he was counting money on the front porch of his Indianapolis home. A.T., who was on probation for dangerous possession of a firearm, was armed with a handgun, and Clay was armed with a rifle. When Arnold reached for the rifle, Clay fired once and A.T. fired twice. The three boys fled the scene. Arnold died from his wounds.

A witness identified A.T. as one of the shooters, and A.T. turned himself in on April 15. The State filed a petition alleging that A.T. was a delinquent for committing acts that would be murder, felony murder, and attempted robbery as a Class A felony if committed by an adult. The State later filed a petition to waive juvenile jurisdiction to adult court. In another cause number, the State filed a petition to modify A.T.'s disposition for violating his probation as a result of this incident.

In October 2010, A.T. and the State entered into a plea agreement in which A.T. admitted to the delinquent act of felony murder and the State agreed to withdraw its petition to waive juvenile jurisdic-

tion to adult court, dismiss the remaining charges in this case, and dismiss the modification petition for violating his probation. A.T. also agreed to testify truthfully as a witness for the State in the trials of Clay and Slash, both of whom had been waived to adult court. As for disposition, A.T. and the State agreed that the court would award wardship of him to the DOC. However, there would be "open argument" at the dispositional hearing as to whether the wardship would be indeterminate under Indiana Code section 31–37–19–6, determinate under Indiana Code section 31–37–19–9, or both. Appellant's App. p. 84, 86.

Following the dispositional hearing in November 2010, the juvenile court awarded wardship of A.T. to the DOC under an indeterminate sentence pursuant to Indiana Code section 31–37–19–6 "for housing in any correctional facility for children until the age of 21, unless sooner released by the [DOC]." *Id.* at 17, 18. The court also ordered wardship of A.T. to the DOC under a determinate sentence

> for housing in any correctional facility for children.... Pursuant to IC 31–37–19–9, the Court finds that [A.T.] was at least 13 years of age and less than 16 years of age and committed an act that, if committed by an adult, would be murder.... The Court orders [A.T.] be committed for a determinate sentence ... [and] remain in the care and custody of the [DOC] until his eighteenth (18th) birthday, which will be 04/12/2014. The Court orders that under I.C. 31–37–19–9 that the [DOC] shall not release [A.T.] prior to his 18th birthday.

*Id.* at 17. A.T. now appeals his determinate sentence only.

### Discussion and Decision

■ A.T. contends that the juvenile court erred in awarding wardship of him to the DOC under a determinate sentence

pursuant to Indiana Code section 31–37–19–9. Statutory interpretation is a matter of law to be determined de novo by this Court. *Pendleton v. Aguilar*, 827 N.E.2d 614, 619 (Ind.Ct.App.2005), *reh'g denied, trans. denied.* Our objective when construing the meaning of a statute is to ascertain and give effect to the legislative intent expressed in the statute. *Chavis v. Patton*, 683 N.E.2d 253, 257 (Ind.Ct.App. 1997). The court is required to determine and effect the legislative intent underlying the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience. *Id.* In so doing, we consider the objects and purposes of the statute as well as the effect and consequences of such interpretation. *Id.* When interpreting the words of a single section of a statute, this Court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. We presume that the legislature intends for this Court to apply language in a logical manner consistent with the statute's underlying policy and goals. *Id.*

We initially note that a juvenile court can enter both indeterminate and determinate sentences under Indiana Code sections 31–37–19–6 and –9 at the same time. *See* Ind.Code § 31–37–19–5(b)(8). Accordingly, the trial court here had the authority to enter both simultaneously, and A.T. does not argue otherwise. *See* Appellant's Br. p. 5 ("The applicable statutes giving the juvenile court authority to make these dispositions specifically authorizes simultaneous commitments."). Instead, A.T. argues that the juvenile court failed to "make[ ] a determination under IC 11–8–8–5," which Indiana Code section 31–37–19–9, the determinate sentencing statute, requires.

We start with Section 31–37–19–9, which provides:

(a) This section applies if a child is a delinquent child under IC 31–37–1.

(b) *After a juvenile court makes a determination under IC 11–8–8–5*, the juvenile court may, in addition to an order under section 6 of this chapter, and if the child:

(1) is at least thirteen (13) years of age and less than sixteen (16) years of age; and

(2) committed an act that, if committed by an adult, would be:

(A) murder (IC 35–42–1–1);

(B) kidnapping (IC 35–42–3–2);

(C) rape (IC 35–42–4–1);

(D) criminal deviate conduct (IC 35–42–4–2); or

(E) robbery (IC 35–42–5–1) if the robbery was committed while armed with a deadly weapon or if the robbery resulted in bodily injury or serious bodily injury;

order wardship of the child to the department of correction for a fixed period that is not longer than the date the child becomes eighteen (18) years of age, subject to IC 11–10–2–10.

(c) Notwithstanding IC 11–10–2–5, the department of correction may not reduce the period ordered under this section (or IC 31–6–4–15.9(b)(8) before its repeal).

(Emphasis added).

Section 11–8–8–5, referenced in subsection (b) above, is unrelated to initial juvenile dispositions. Rather, as shown below, it involves sex and violent offender registrations. That is, it defines "sex or violent offender" as a person convicted of numerous offenses, including murder. Ind.Code § 11–8–8–5(a)(18). It also provides:

(b) The term includes:

(1) a person who is required to register as a sex or violent offender in any jurisdiction; and

(2) a child who has committed a delinquent act and who:

(A) is at least fourteen (14) years of age;

(B) is on probation, is on parole, is discharged from a facility by the department of correction, is discharged from a secure private facility (as defined in IC 31–9–2–115), or is discharged from a juvenile detention facility as a result of an adjudication as a delinquent child for an act that would be an offense described in subsection (a) if committed by an adult; and

(C) is found by a court by clear and convincing evidence to be likely to repeat an act that would be an offense described in subsection (a) if committed by an adult.

(c) In making a determination under subsection (b)(2)(C), the court shall consider expert testimony concerning whether a child is likely to repeat an act that would be an offense described in subsection (a) if committed by an adult.

*Id.* § 11–8–8–5.

It is undisputed here that the juvenile court did not make a determination under Section 11–8–8–5(b)(2)(C) before imposing a determinate sentence according to Section 31–37–19–9. Instead, the court found that A.T. was thirteen years old, committed an act that would be murder if committed by an adult, and was thus eligible for a determinate sentence. Appellant's App. p. 17. The State argues, however, that this was proper according to this Court's opinion in *B.K.C. v. State*, 781 N.E.2d 1157

(Ind.Ct.App.2003). A.T. responds that *B.K.C.* is no longer good law in light of subsequent amendments to the statute.

In *B.K.C.*, B.K.C. argued that the trial court erred by imposing a determinate sentence because the court failed to make a determination under Indiana Code section 5–2–12–4,[1] which Section 31–37–19–9 required. In carefully analyzing both statutes, however, this Court concluded that a determination under

Ind.Code § 5–2–12–4 [now Indiana Code section 11–8–8–5] is not required before a juvenile court may order wardship of a delinquent child to the DOC for a determinate period, if the child meets the criteria set out in Ind.Code §§ 31–37–19–9(b)(1)–(2). In reaching this conclusion, we construe Ind.Code § 31–37–19–9 in such a way as to ignore the words: "After a juvenile court makes a determination under IC 5–2–12–4 [now Indiana Code section 11–8–8–5]." We do so to give effect to the apparent intent of the legislature and to avoid a construction that would be an absurdity. Our reasoning follows.

*B.K.C.*, 781 N.E.2d at 1167.

First, we reasoned that Section 5–2–12–4 (now Section 11–8–8–5) is part of the statutory scheme requiring registration of sex and violent offenders and specifically defines those people who must register while Section 31–37–19–9 is part of the statutory scheme for disposition of children who have been adjudicated delinquent. *Id.* at 1168–69. We then pointed out that a determination under Section 5–2–12–4 (now Section 11–8–8–5) is not made as part of an initial disposition but rather must wait until the child has been discharged from the DOC. *Id.* at 1169. This

---

1. This section was repealed and recodified in 2006 to the current-day Section 11–8–8–5. *See* P.L. 140–2006, 173–2006. In addition,

Section 11–8–8–5 had minor amendments in 2007. *See* P–L 206–2007.

then posed the problem that only children who had been previously required to register under Section 5–2–12–4 (now Section 11–8–8–5) could be subject to determinate wardships, while the "mere" robber or murderer could not. *Id.* We found this interpretation to "fl[y] in the face of the otherwise clear intent of the legislature to allow the juvenile court the discretion to order determinate wardships for delinquent children who commit offenses specified in" Section 31–37–19–9. *Id.*

Second, we reasoned that the two statutes did not contain the same offenses. *Id.* at 1169–70. For example, Section 31–37–19–9 allows a determinate sentence for five acts that would be crimes if committed by an adult, including robbery, *see* I.C. § 31–37–19–9(b)(2)(E), but Section 11–8–8–5, which lists numerous offenses, does not define "sex or violent offender" to include robbery, *see id.* § 11–8–8–5(a)(1)–(21). We found that this discrepancy provided further support that the legislature did not intend for the trial court to make a determination pursuant to Section 11–8–8–5 before ordering a determinate sentence.

Finally, we reasoned that the qualifying ages for the two statutes did not match. *B.K.C.,* 781 N.E.2d at 1170. That is, Section 31–37–19–9 provides that the child must be at least thirteen but less than sixteen years old, *see* I.C. § 31–37–19–9(b)(1), while Section 11–8–8–5 provides that the child must be at least fourteen years old, *see* I.C. § 11–8–8–5(b)(2)(A). This means that thirteen-year-olds are excluded under Section 11–8–8–5. Based on these three reasons, we concluded:

> So, we come to the point in our analysis where we conclude that only by ignoring the phrase "After a juvenile court makes a determination under IC 5–2–12–4 [now Section 11–8–8–5]" in Ind.Code § 31–37–19–9 can we give effect to the otherwise clearly expressed intent of the legisla-

ture to require certain juvenile offenders to register as sex and violent offenders and to allow juvenile courts the discretion to impose determinate wardships on juvenile offenders who commit certain acts. *See, e.g., State v. Doody,* 556 N.E.2d 1357 n. 6 (Ind.Ct.App.1990) (refusing to construe a statute as literally written because to do so would obtain an unreasonable result), *reh'g denied, trans. denied.* In so doing, we avoid absurd results and revision of statutes to cobble together something we think might work. If we have gotten it wrong, the legislature will act to correct the matter.

*B.K.C.,* 781 N.E.2d at 1170.

After our 2003 opinion in *B.K.C.,* in 2006 the legislature repealed Section 5–2–12–4 and recodified it at the current-day Section 11–8–8–5. *See* P.L. 140–2006, 173–2006. The only substantive change between Sections 5–2–12–4 and 11–8–8–5 is the addition of subsection (c), which is the requirement that the juvenile court consider expert testimony concerning whether the child is likely to repeat an offense listed in subsection (a). The legislature made no amendments to Section 31–37–19–9 other than to change the reference in subsection (b) from Section 5–2–12–4 to Section 11–8–8–5. *See* P–L 140–2006, 173–2006.

A.T. argues on appeal that (1) because the *B.K.C.* Court interpreted Section 31–37–19–9 to ignore the phrase "After a juvenile court makes a determination under IC 5–2–12–4," (2) the *B.K.C.* Court specifically invited the legislature to correct its construction of the statute if it was indeed wrong, and (3) the legislature then amended Section 31–37–19–9 three years later leaving the phrase "After a juvenile court makes a determination under IC 5–2–12–4" in place, "the legislature was not acquiescing in the [*B.K.C.*] court's interpre-

tation but rather was rejecting [its] interpretation." Appellant's Reply Br. p. 2. We reject A.T.'s argument for two reasons.

First, *B.K.C.* was decided in 2003. The legislature did not amend Section 31–37–19–9 until 2006, and that was to change the citation from Section 5–2–12–4 to Section 11–8–8–5. This amendment more than three years later in which the phrase was untouched does not signal a rejection of *B.K.C.* If the legislature had disapproved of *B.K.C.*, we would have expected a much more timely action on its part, especially because the B.K.C. Court invited them to act.

Second and more importantly, we find that the *B.K.C.* Court's reasoning still applies today. That is, Section 11–8–8–5 is part of the statutory scheme requiring registration of sex and violent offenders, including certain juveniles, while Section 31–37–19–9 is part of the statutory scheme for disposition of children who have been adjudicated delinquent. In addition, a determination under Section 11–8–8–5 does not come at the time of initial disposition but rather when a juvenile is discharged from the DOC or a secure private facility/juvenile detention facility. In addition, there are conflicts between Sections 11–8–8–5 and 31–37–19–9. That is, the offenses and the offenders' ages do not match. For example, a thirteen-year-old who commits robbery with a deadly weapon would qualify under Section 31–37–19–9 according to both age and offense but would be disqualified under Section 11–8–8–5 according to both age and offense. Following the lead of the *B.K.C.* Court, we ignore the introductory phrase "After a juvenile court makes a determination under IC 11–8–8–5" in Section 31–37–19–9(b).

Nevertheless, A.T. argues that our action in ignoring this phrase overrides the legislature's scheme of allowing first-time juvenile offenders, including murderers, the chance to be rehabilitated before being called a sex or violent offender and thus subject to a determinate sentence. We disagree that this is the legislature's plan. Rather, we believe the legislature's plan is one of flexibility for our juvenile courts. Accordingly, juveniles who commit an offense listed in Section 31–37–19–9(b)(2) for the first time and are at least thirteen years old but less than sixteen years old are subject to a determinate sentence. We now proceed to address whether the juvenile court abused its discretion in sentencing A.T. to a determinate sentence.

■ The choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will be reversed only if there has been an abuse of that discretion. *K.A. v. State*, 938 N.E.2d 1272, 1274 (Ind.Ct.App.2010), *trans. denied.* The juvenile court's discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition. *Id.* An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom. *Id.* Moreover, Indiana Code section 31–37–18–6 enumerates a list of factors that the court must consider when entering a dispositional decree. It provides:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
> (1) is:
>> (A) in the least restrictive (most family like) and most appropriate setting available; and
>> (B) close to the parents' home, consistent with the best interest and special needs of the child;

(2) least interferes with family autonomy;

(3) is least disruptive of family life;

(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Ind.Code § 31–37–18–6.

A.T. argues that the juvenile court abused its discretion in ordering a determinate sentence because the wardship was for nearly three and a half years, it was his first commitment to the DOC, he was cooperative with the police in their investigation and agreed to testify against Clay and Slash, and he expressed both remorse for his actions and a desire to get away from street life. We, however, find no abuse of discretion.

A.T. was one day shy of his fourteenth birthday when he, along with two gang members, murdered a sixty-six-year-old man counting money on his front porch. This was A.T.'s fourth referral to juvenile court. In fact, A.T. was placed on probation for dangerous possession of a firearm just two weeks before this offense. The juvenile court ordered a determinate commitment because it was "essential to protect the child and the community." Tr. p. 47–48. Given the offense, A.T.'s history, and the juvenile court's careful and thoughtful sentence which balanced A.T.'s rehabilitation with the safety of the community, we find no abuse of discretion with A.T.'s determinate sentence.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.